## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) |
| | )   Criminal No.: 1:21-cr-00446-EGS |
| | ) |
| DAVID TOLSON, | ) |
| | ) |
| Defendant. | ) |
| ——————————————— | ) |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through its undersigned attorneys, respectfully submits its sentencing memorandum in the above-captioned case. For the reasons discussed herein, and any other points and authorities made at the sentencing hearing, the government recommends that the defendant be sentenced to a brief period of probation with an accompanying condition of a brief period of intermittent incarceration or home confinement.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2021, the defendant pleaded guilty to a one-count Information charging him with acts affecting a personal financial interest, in violation of 18 U.S.C. § 208. The defendant admitted that while he was a Sergeant in the United States Park Police ("USPP"), he negotiated for and accepted a new position with a private company, Company A. He did so while serving as USPP's primary point of contact for Company A as Company A performed work valued at hundreds of thousands of dollars on USPP's helicopter fleet. Even after the defendant secretly began working for Company A part-time while still working for USPP, the defendant advocated to USPP leadership for Company A to be awarded a new sole source contract with USPP.

The defendant admitted that he did this while knowing full well the type of conduct prohibited by 18 U.S.C. § 208. The defendant received information from a Department of the Interior ("DOI") ethics official regarding the criminal conflict of interest statutes. But the defendant violated 18 U.S.C. § 208 anyway.

Finally, and most troubling to the government, the defendant admitted that he lied to government officials and Company A executives as he pursued his new job opportunity with Company A. Specifically, the defendant admitted that he told his boss at USPP and Company A executives that a DOI ethics official had given him clearance to work for Company A. That was a lie. That lie facilitated the defendant landing a six-figure job at Company A.

## II.   SENTENCING GUIDELINES CALCULATION

The defendant's sentencing guidelines, as set forth by the United States Sentencing Commission Guidelines ("U.S.S.G." or the "Guidelines"), calculated in the Presentence Investigation Report ("PSR") are as follows:

| | |
|---|---|
| Base Offense Level | 6 (§ 2C1.3) |
| Acceptance of Responsibility | -2 (§ 3E1.1(a)) |
| | |
| <u>Total Offense Level:</u> | <u>4</u> |
| | |
| Criminal History Category I | 0 points |
| Guidelines Sentencing Range | 0-6 months |

ECF No. 13. The government disputes the two-point reduction for acceptance of responsibility in this case. As the Court is well-aware, a guilty plea does not automatically confer a two-point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1, Application Note 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). Rather, a guilty plea and wholesome admission of the pertinent facts "will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence

may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*

Two aspects of the defendant's post-plea conduct are inconsistent with him fully accepting responsibility.  First, the defendant did not provide full and complete financial, educational, vocational, and military service records or data to the assigned probation officer despite the officer's requests.[1]  For example, the defendant failed to "complete the Cash Flow or Net Worth Statement provided to him," failed to "provide any verification of his income or expenses," and failed to provide his federal tax returns as requested.  *See* ECF No. 13 at 13.  Additionally, the defendant did not comply with the probation officer's request to allow the officer access to the defendant's educational, vocational, or military records. *See id.* at 12.

Second, the defendant has failed to comply with requests from law enforcement to be booked by the United States Marshals Service.  Law enforcement did not arrest the defendant for his crime.  Rather, the defendant was allowed to appear for his initial appearance at a mutually agreeable date and time.  The result of the defendant receiving the benefit of not being arrested was that the U.S. Marshal's Service did not have the opportunity to book the defendant prior to the defendant's plea.  Law enforcement reached out to the defendant's counsel and requested that the defendant arrange to be booked.  To date, the defendant has still not made time to be booked.

The defendant's apparent apathy toward providing the probation officer with the requested information and with finding time to get booked by the Marshals shows that the defendant has not fully accepted responsibility for his crime.  The defendant has admitted to the underlying facts and pleaded guilty.  But there is a difference between the defendant accepting that he has committed a

---

[1] The defendant was on notice that the government may argue against the two-point reduction for acceptance of responsibility if he failed to follow instructions of the probation officer. *See* ECF No. 7 at 4–5 ("The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant . . . fails to give complete and accurate information about the defendant's financial status to the Probation Office[.]"

crime and accepting responsibility for committing that crime. Full acceptance of responsibility includes a recognition that there are consequences for committing the crime. The defendant's actions, or lack thereof, evidence a failure to appreciate that one consequence of committing his crime is having to inconvenience himself to comply with requests and requirements from the Court, probation, and the Marshals. If the defendant had fully accepted responsibility for committing his crime, he would have shown deference to the probation officer who was attempting to gather information in order to recommend an appropriate punishment. But the defendant was not deferential. Instead, the defendant decided to not take the necessary time to provide information that would have allowed the Court to have a wholesome picture of the defendant's circumstances. That conduct is inconsistent with one who has fully accepted responsibility for his crime and the consequences that flow from it.

The government anticipates that the defendant will attempt to excuse his failure to provide probation with the requested information and his failure to take time to be booked by the Marshals by telling the Court that he has been performing domestic National Guard service.[2] This excuse, and any like it, only further show that the acceptance of responsibility reduction should not apply here. First, it is not cognizable that serving on a domestic National Guard mission would completely bar a person from accessing personal financial information and providing that information to probation. The defendant certainly had access to at least a cellphone, if not a computer, from which he could have accessed that information and sent it to probation. It would defy logic to suggest that domestic National Guard service would completely stop someone from complying with requests for information from a probation officer. Second, using National Guard service as an excuse for not providing complete information and not getting booked shows that the

---

[2] The government received information from the defendant's National Guard unit leadership that the defendant was released from his National Guard service in New Jersey on February 2, 2022.

defendant is prioritizing his own personal endeavors, however admirable they may be, ahead of fully accepting responsibility for his crime. Accepting an appropriate punishment must be a part of taking responsibility for a crime. Choosing to prioritize his own endeavors over facilitating the Court's access to information needed to craft an appropriate punishment does not comport with the defendant fully accepting responsibility.

The defendant's military service should not excuse what has proven to be only partial acceptance of responsibility. The Court should not apply the two-point reduction in the Guidelines calculation for acceptance of responsibility.

## III.   LEGAL STANDARD IN FASHIONING AN APPROPRIATE SENTENCE

This Court is afforded "wide discretion" in assigning an appropriate sentence to a defendant. *See United States v. Ayers*, 795 F.3d 168, 177 (D.C. Cir. 2015). "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972). In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Booker*, 543 U.S. at 264. The Guidelines should "be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The court "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49. The factors in 18 U.S.C. § 3553(a) courts consider include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence

to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (3) the Sentencing Guidelines and types of sentences available, (4) any related Sentencing Commission policy statements, and (5) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a). The § 3553(a) factors should be weighed in light of the applicable Guidelines and underlying policies. *See Gall*, 552 U.S. at 49. A sentence "within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness." *United States v. Law*, 528 F.3d 888, 902 (D.C. Cir. 2008) (quotations and citations omitted).

Finally, home confinement may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment. U.S.S.G. § 5F1.2. Similarly, intermittent incarceration on nights or weekends can be imposed as a condition of probation during the first year of probation. 18 U.S.C. § 3563(b)(10); U.S.S.G. § 5F1.8.

## IV.   ARGUMENT

The Court should sentence the defendant to a brief period of incarceration, through home detention or intermittent confinement, as a condition of a limited term of probation. This sentence would be appropriate in this case for three reasons. First, the defendant's criminal conduct constituted a serious breach of the public trust. In enacting the current version of the criminal conflict of interest statutes, including 18 U.S.C. § 208, Congress made clear, "It is vital at all times that the public interest be safeguarded and that the highest standards of integrity in the public service be maintained." 107 Cong. Rec. 14,781 (1961) (statement of Rep. Lindsay). This defendant did the opposite. The defendant, knowing full well what ethical constraints public service placed on him, made a conscious choice to put his own interests ahead of the public's. Particularly as a law enforcement officer and a representative of the National Guard, this defendant

should understand better than most how important it is for public officials to maintain public trust. But the defendant broke that trust by playing for both sides. The defendant secured employment for himself with Company A while simultaneously asking the government to give Company A a sole source contract. That type of conduct by career public servants further erodes the public's trust in the government's ability to do its job fairly.

The defendant's decision to lie about getting clearance from an ethics official to work for Company A further amplifies the serious nature of this crime. The defendant's crime was not a mistake. It was a conscious disregard of the law that he knew. That is extraordinarily damaging to the public's trust in its government, and particularly to its trust in law enforcement. When a defendant's crime jeopardizes the public's confidence in the government's ability to be impartial and to put the public interest first, that crime should be treated as serious.

Second, the government's recommended sentence will serve as a powerful general deterrent to other Executive Branch employees considering undertaking similar conduct. The defendant occupied an important, but not unique, position within the government. The defendant was one of the myriad government employees who develop a particularized technical expertise during their government service which is then relied upon by management in making financial and strategic decisions for the government. That type of technical expertise can make the government employee valuable to the government but also valuable to private companies. That is why conflict of interest laws exist. Conflict of interest laws prevent public servants from using their positions to reap financial benefits in the private sector for themselves, their families, or their future employers. Without meaningful consequences for criminal violations of those laws, public employees similarly situated to the defendant may not be deterred from engaging in similar conduct. The Court's sentence here can be a warning knell for all those public officials who

consider using their position in the government to facilitate a financial benefit for themselves or a prospective employer.

Third, the defendant has left the Court with few options in fashioning an appropriate sentence, other than that recommended by the government, because of his post-plea conduct, as described above.  It is the government's position that the Court does not have sufficient information to sentence the defendant to pay an appropriate fine in this case.  The Court has essentially no financial information about the defendant.  Because the defendant did not provide the financial information requested of him by the probation officer, the Court does not have access to the defendant's monthly expenses, his monthly income, and any other liabilities he may have.  The defendant indicated to the probation officer that he does not intend to continue working for Company A after these proceedings (*see* ECF No. 13 at 12) but has not provided the Court with any indication of whether he has another source of income with which to pay a fine.  Because of the defendant's failure to provide information to the probation officer, the Court cannot be sure whether a fine would be an appropriate part of a "sufficient, but not greater than necessary" sentence, as required by 18 U.S.C. § 3553(a).

The defendant's decision to not take the time to provide financial information to the probation officer and to not provide or sign releases for the probation officer to access vocational, educational, and military service records shows that a sentence of solely probation would be inappropriate, here.  The defendant has shown a lack of respect for the role of the probation officer in the course of the presentence investigation.  The defendant has prioritized his own personal endeavors over acquiescing to the requests of the probation officer, demonstrating a lack of amenability to probation.

A sentence of a brief period of probation for the purpose of imposing a condition of a brief period of home confinement or intermittent incarceration is the appropriate sentence in this case. It would reflect the seriousness of the defendant's criminal conduct that breached the public trust, deter other public officials from attempting to secure financial benefit for private sector employers with whom they have arranged to work, and acknowledge that the defendant's post-plea decisions are incongruent with a lighter sentence of probation or a fine.

**V.    CONCLUSION**

Based on the applicable guideline range of 0-6 months and a consideration of the sentencing factors provided in 18 U.S.C. § 3553(a), the government recommends that the defendant be sentenced to a brief period of probation for the purpose of imposing a condition of a brief period of home confinement or intermittent incarceration.

Respectfully Submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section


_/s/ Jordan Dickson_
JORDAN DICKSON
JACOB STEINER
Trial Attorney
United States Department of Justice
Public Integrity Section
1301 New York Ave. NW, Ste. 1000
Washington, DC  20530
(202) 597-0508
jordan.dickson@usdoj.gov

CERTIFICATE OF SERVICE

I certify that the Government's Sentencing Memorandum was filed by CM/ECF Electronic

Filing, which will provide notice to counsel of record for the defendant.


/s/ Jordan Dickson
Jordan Dickson
Trial Attorney

Date: February 24, 2022