# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-CR-0446 |
| | : | Honorable Emmet G. Sullivan |
| DAVID TOLSON, | : | |
| | : | |
| | : | |

## DAVID TOLSON'S SENTENCING MEMORANDUM

### INTRODUCTION





Source: Brennan Center for Justice. Available online:
https://www.brennancenter.org/sites/default/files/blog/images/201807MassIncarcerationGraph-02b.jpg

In the Age of Mass Incarceration, the government's solution for a crime (non-violent, misdemeanor, and victimless) and a man (35 years of military and law enforcement service, no criminal record, and a veteran) is—more incarceration. In this post-George Floyd Moment, when the country is searching for meaningful reform of the criminal legal system, the government has failed to meet the Moment. In this most consequential Moment for David Tolson, when he must struggle with the permanent Scarlet Letter of a federal criminal conviction, the government has chosen to double-down on its decades-old carceral solution, instead of work with Mr. Tolson to find a real solution to fraud. Finally, the government cloaks a seeming vengeance for David Tolson's missteps—of both the misdemeanor and non-criminal variety—in the rhetoric of deterrence. However, by joining Mr. Tolson and the U.S. Probation Office in a recommendation of probation, this Court can meet the Moment—like it has met so many others in the past.

## ARGUMENT

As the Court is well aware, the current case law provides a three-step roadmap to arrive at a just and fair sentence in 2022. **First**, the sentencing court must correctly determine the sentence under the United States Sentencing Guidelines. *United States v. Gall*, 552 U.S. 38, 49 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.") (internal citations omitted). The sentencing court should start with the Guidelines calculation "to secure nationwide consistency." *Id.*; *United States v. Kaufman,* 791 F.3d 86, 89 (D.C. Cir. 2015)(explaining that although a district court is not required to follow the Guidelines after *United States v. Booker*, 543 U.S. 220, 259–60 (2005), the Guidelines remain "the starting point and the initial benchmark" for a sentencing decision).

**Second**, the sentencing court must consider 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50; *United States v. Brinson-Scott*, 714 F.3d 616, 625 (D.C. Cir. 2013). While the advisory Guidelines should be the starting point and the initial benchmark, the sentencing court must consider all the factors of 18 U.S.C. § 3553(a). *Pepper v. United States*,131 S. Ct. 1229, 1241 (2011) (internal citations and quotations omitted). In considering the 18 U.S.C. § 3553(a) factors, the district court must "impose a sentence that is sufficient but not greater than necessary to accomplish the goals of sentencing." 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *see also Pepper*, 131 S. Ct. at 1242.

**Third**, the sentencing court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. *Brinson-Scott*, 714 F.3d at 625. "This necessarily means that the sentencing court is free to conclude that the applicable Guidelines range gives too much or too little weight to one or more factors, either as applied in a particular case or *as a matter of policy*." *United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008) (emphasis added). The sentencing court must explain its reasons for the sentence "to allow for meaningful appellate review and to

3

promote the perception of fair sentencing." *Brinson-Scott*, 714 F.3d at 625; 18 U.S.C. § 3553(c). Accordingly, the defense submits this Sentencing Memorandum to aid theCourt in this challenging three-step process.

## I. A SENTENCE OF PROBATION COMPLIES WITH THE GUIDELINES.

### A. As a First-Time, Non-Violent Offender, the Guidelines Advise Probation.

Mr. Tolson, the government,[1] and the U.S. Probation Office agree on the calculation of the Guidelines. *See* Gov't.'s Sentencing Memo. at 2 (Dkt. No. 15) ("Gov't. Memo."); Presentence Report at 8 ("PSR"). The Offense Level is 4 with the following calculations:

| | |
|---|---|
| 6 | Base Offense Level (2C1.3) |
| -2 | Acceptance of Responsibility (3E1.1) |
| **4** | **Offense Level** |

Mr. Tolson has no criminal history. His Criminal History Category is I. With a Base Offense Level of 4 and a Criminal History Category of I, the Guidelines recommend a Zone A sentence of 0 to 6 months or probation. Even if the government disagrees with Mr. Tolson and the U.S. Probation Office that Mr. Tolson accepts responsibility for his crime, Mr. Tolson's Guidelines still land him squarely in Zone A—0 to 6 months or probation.

A 2018 amendment to the Guidelines recommends probation for Mr. Tolson. It advises, "[i]f the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing *a sentence other than imprisonment*." U.S.S.G. § 5C1.1 cmt. 4 (emphasis added). Mr. Tolson is a first offender who falls in Zone A. A non-incarceration sentence is appropriate here.

---

[1] The term "government" is used in this Memorandum to indicate the U.S. Justice Department—not the U.S. Probation Office or any other part of the U.S. government.

B. <u>More than Just Accepting Responsibility for his Crime, He Tried to Solve the Crime.</u>

The government's argument that Mr. Tolson has not accepted responsibility is wrong for, at least, three reasons. The government argues that Mr. Tolson did not accept responsibility because he failed to provide the U.S. Probation Office with various financial forms and he failed to take a booking picture. Gov't. Memo. at 3. **First**, the government's argument is legally unavailing. Mr. Tolson is aware of no cases and the government cites no cases where a court denied acceptance of responsibility because the person failed to provide the requested financial documents to the U.S. Probation Office. The same is true for failing to take a booking a picture. Not only does the government fail to cite a case supporting its position, but also it fails to cite a meaningful Guideline provision. *See generally* Gov't. Memo.

**Second**, the government's argument misstates the facts. As of February 28, 2022, Mr. Tolson provided the U.S. Probation with the various financial forms. On March 14, 2022 and in order to accommodate the government agent's schedule, Mr. Tolson will be booked. While these dates came after the government's filing of its Sentencing Memorandum, the government was always in contact with undersigned counsel and knew that Mr. Tolson had every intention of sending in the requested forms and being booked.

Mr. Tolson is intimately familiar with the booking procedure because while working for the U.S. Park Police for 25 years, he used to be the District of Columbia Court Liaison to the Office of the Attorney General and U.S. District Court. Ex. 1 at 1 (Tolson Bio.). Being in law enforcement for decades means that he holds law enforcement in very high esteem. Accordingly, Mr. Tolson apologized to the U.S. Probation Office for his late provision of the financial forms and the Court should expect that Mr. Tolson will apologize to the law enforcement officer who books Mr. Tolson.

Mr. Tolson is not "apath[etic]" toward law enforcement as the government speculates, but he is ashamed of his actions as law enforcement. Gov't. Memo. at 3.

Mr. Tolson failed to provide the financial forms and be booked because he has been pre-occupied with assisting the Afghan refugees in New Jersey as part of the Air National Guard. Mr. Tolson's connection to Afghanistan is personal because he served in Afghanistan during Operation Enduring Freedom. Ex. 1 at 1 (Tolson Bio.); Ex. 2 at 6 (Hoban Letter). When this country evacuated from Afghanistan in 2021, Mr. Tolson worked state-side to assist Afghan refugees as part of the Air National Guard. That occurred during the time that Mr. Tolson was engaged in the PSR process. While Mr. Tolson's service to this country does not excuse his need to send in financial forms and be booked, it undercuts the government's pure speculation that Mr. Tolson simply ignored the consequences of his conviction.

**Third** and most importantly, Mr. Tolson accepted responsibility from almost Day 1 by offering to assist the government in solving his crime. Mr. Tolson began to work with Company A because he believed that the U.S. Park Police ("USPP") tacitly condoned his behavior. When it became time for Mr. Tolson to leave USPP in 2018, many of his peers and supervisors knew how Mr. Tolson had worked with Company A while at USPP and that he was going to work for Company A after USPP. Mr. Tolson offered to help the government to come up with a way to better inform relatively low-level government employees—like Sergeant Tolson—about how to properly leave government service for private practice. The government refused.

**II.    A SENTENCE OF PROBATION COMPLIES WITH 18 U.S.C. § 3553(a).**

A. <u>Mr. Tolson's Life of Service.</u>

The overarching goal of sentencing is to "impose a sentence sufficient, but not greater than necessary" to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). Here, *none* of these

purposes—deterrence, rehabilitation, or punishment—support a term of incarceration. Probation is sufficient to achieve the purposes of sentencing, and any term of incarceration—including intermittent confinement—would be greater than necessary. As detailed in his Biography (Ex. A) and the six character letters (Ex. B), Mr. Tolson has lived a life of service. Mr. Tolson's good character matters. As Judge Jed S. Rakoff advised:

> [I]f ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. . . .[This is what] Congress had in mind when it directed courts to consider, as a necessary sentencing factor, the "history and characteristics of the defendant."

*United States v. Adelson*, 441 F. Supp. 2d 506, 513–514 (S.D.N.Y. 2006). Mr. Tolson's conduct in this case pales in comparison to all the good work he has done.

Mr. Tolson is 54 years old. He has been a law-abiding citizen his entire life. He is a committed family member: a husband, father of three. He is a pillar of the community. He helped save the life of U.S. Congressman Steve Scalise in June 2017. For that effort, USPP awarded him the Medal of Merit. Ex. A at 1 (Tolson Bio.). He helped create a union for the USPP officers. Ex. B at 2 (De Nigris Letter). He became a paramedic to save and serve his fellow human. Ex. B at 8 (Payne Letter). He saved another person's life during the Navy Yard mass shooting in September 2016. Ex. B at 9 (Scherr Letter). For that self-sacrifice, he received the Navy Superior Civilian Medal for Valor. Ex. A at 1 (Tolson Bio.).

Now, at the worst moment of his life, his decades of caring for others during the worst moments of their lives should matter. *See United States v Serafini*, 233 F.3d 758, 775 (3d Cir. 2000) (affirming district court's downward departure based on defendant's extraordinary personal kindness and good works). Mr. Tolson's age, especially in combination with his other characteristics and the already-low Guidelines range, counsels against a term of incarceration. *See*

U.S.S.G. 5H1.1 (age can be basis for departing downward in cases involving elderly defendants, especially considering offender characteristics and where non-incarceration forms of punishment are equally efficient and less costly than incarceration). Given that he is and was a productive community member and a loving family man, as demonstrated by his 35 years of military, law enforcement, and paramedic service, a sentence of probation is appropriate. *See United States v. Haynes*, 557 F. Supp. 2d 200 (D. Mass. 2008) (imposing time served sentence despite range of 33–31 months where defendant had "shown real motivation to live a fruitful and productive life and who [ha[d] meaningful relationships with all of his children.").

  B. <u>A Carceral Sentence is Unnecessary for Deterrence</u>.

  The government's argument that incarcerating Mr. Tolson will serve as deterrent against other government employees misunderstands the research on deterrence. Gov't. Memo. at 7. Research shows that general deterrence simply does not work. The reality is that future offenders do not consider the sentences people receive when deciding whether to commit crimes. *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28–29 (2006) (noting that "certainty and promptness of punishment are more powerful deterrents than severity"); *United States v. Lawrence*, 254 F. Supp. 3d 441, 442–46 (E.D.N.Y. 2017) (quoting expert witness who stated, "[p]eople are more motivated by the probability of being caught than by the severity of the punishment . . . ."). It is the certainty not the severity the punishment that matters. Thus, incarceration is not the key; it is Mr. Tolson's punishment—the permanent Scarlet Letter of a federal conviction.

  Even if general deterrence were considered, here, the potential deterrent effect has already been achieved through Mr. Tolson's prosecution and the consequences that have flowed from his

conviction. Mr. Tolson's ability to work in law enforcement is greatly hampered by this misdemeanor conviction. That is deterrence enough.

Specific deterrence is not necessary in this case. Mr. Tolson poses no danger to the community. He does not need to be incarcerated to ensure that he will not re-offend. He no longer works for the government.

C. Rehabilitation Does Not Support a Term of Incarceration.

Mr. Tolson does not need rehabilitation. Unlike many people, Mr. Tolson needs no mental health counseling, drug treatment, education, or employment coaching. PSR at 11-12. This fact further weighs in favor of probation.

D. Probation is Not Leniency.

Mr. Tolson's flawless life is no more. The ignominy of a conviction hurts forever. While both the Chief Executive Officer and the Chief Technology Officer of Company A wrote letters supporting Mr. Tolson, his four kids did not. Ex. B at 10-12 (Wise Letter); Ex. B at 4-5 (Griffin Letter). Three of those kids Mr. Tolson practically raised as a single parent. Mr. Tolson struggles to tell his kids about what he has done. That is punishment. *See Gall v. United States*, 552 U.S. 38, 48 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."); *see also id.* n.4 ("Probation is not granted out of a spirit of leniency . . . .) (citation omitted).

E. Probation Almost Avoids an Unwarranted Sentencing Disparity.

As explained above, Mr. Tolson's peers and superiors knew about and tacitly condoned Mr. Tolson's job with Company A. Only Mr. Tolson stands convicted. The government refused to offer Mr. Tolson a deferred prosecution agreement or a non-prosecution agreement. The

9

government's carceral solution would only exacerbate the sentencing disparity in violation of 18 U.S.C. § 3553(a)(6).

F. <u>A Victimless Crime</u>.

As explained in the character letters by the Chief Executive Officer and the Chief Technical Officer of Company A, Mr. Tolson's work made the D.C. metropolitan area safer. He literally saved peoples lives. At no time did the USPP pay more for a contract than it should have. The public's trust in government service was enhanced by Mr. Tolson because Mr. Tolson enhanced the government's ability to serve the public. In the words of the Chief Executive Officer of Company A, "[w]e need more Americans like David Tolson." Accordingly, restitution is not an issue under 18 U.S.C. § 3553(a)(7); there are no victims here.

## CONCLUSION

Mr. Tolson is a decent man who should be judged based on the overall positive impact he has had on the lives of the people he served in law enforcement, the military, and as a paramedic. Judge him by what his friends and co-workers say. Judge him by how he raised his family. He asks the Court to holistically consider his extraordinary character and the circumstances of this case. Considering them all—his incredible work ethic and spirit of generosity; the unconditional love and support he provides to his family, employees, and community; the victimless nature of the crime; the fact that this is his first and only interaction with the criminal legal system; and that Mr. Tolson will forever walk with a Scarlet Letter of a federal conviction—and for all the other reasons raised in this memorandum, a sentence of probation is sufficient to meet the purposes of sentencing in this case. Anything more is "greater than necessary." Anything more fails to meet the Moment.

Dated: March 10, 2022				Respectfully submitted,

						/s/
						Kobie A. Flowers (Bar No. 991403)
						kflowers@browngold.com

						Brown, Goldstein & Levy, LLP
						1717 K Street, NW, Suite 900
						Washington, DC 20006
						Tel: (202) 742-5969

						*Attorney for David Tolson*

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I have caused true and correct copies of the above and foregoing to be served on all counsel of record via the Court's CM/ECF system, in accordance with the rules of electronic filing of documents, on March 10, 2022.

/s/
Kobie A. Flowers